Frederic C. HAMILTON, et al., Plaintiffs,

v.

Scott A. CUNNINGHAM, Defendant.

No. 94–K–680.

United States District Court,
D. Colorado.

April 4, 1995.

Bruce A. Featherstone, Scott R. Bauer, Raymond L. Gifford, Kirkland & Ellis, Denver, CO, for plaintiffs.

Charles F. Brega, Wesley B. Howard, Carla B. Minckley, Brega & Winters, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Frederic C. Hamilton, Hamilton Brothers' Exploration Co. ("ExCo"), Hamilton Brothers Petroleum Corporation ("PetCo"), Hamilton Brothers Oil and Gas Corporation ("Oil & Gas Co."), and Hamilton Brothers Oil Company ("OilCo") (collectively "Plaintiffs" or the "Hamilton Parties") initiated this action on March 22, 1994, seeking a declaration of non-liability to defendant Scott A. Cunningham, a former vice-president of OilCo, on various statutory and common law securities claims he filed against them in Canada on statute of limitations grounds. The Hamilton Parties seek entry of judgment pursuant to Fed. R.Civ.P. 12(c) on the twelve remaining claims of their Complaint for Declaratory Judgment as well as on the four remaining claims of Cunningham's Counterclaim. They contend the facts admitted by Cunningham in his Answer and alleged in his Counterclaim establish, as a matter of law, the untimeliness of his Canadian claims.

After hearing oral argument and reviewing carefully the parties' briefs, I have decided to exercise jurisdiction over this declaratory judgment action, granting Plaintiffs' motion in part and denying it in part.

### I. FACTS

Until April 1994, and at all times relevant to this lawsuit, Cunningham was the Vice President of OilCo. He also owned stock in

several of the corporate plaintiffs, including ExCo. On January 31, 1994, Cunningham filed a Statement of Claim in the Court of Queens Bench of Alberta in the Judicial District of Calgary, Canada (the "Canadian Complaint"). Cunningham asserted claims against the Hamilton Parties and eight other defendants under the Securities Exchange Act of 1934 and its implementing rules, the Organized Crime Control Act (RICO), the federal mail fraud statute, and Canadian securities law, as well as under common law fraud, negligence and breach of fiduciary duty theories. His allegations concerned two transactions involving the plaintiff oil companies: the 1979 merger of Exco into OilCo, a subsidiary of Petco (the "ExCo Transaction" or "Freeze–Out Merger") and a 1974 partial tender offer whereby Volvo North America Corporation (Volvo) acquired a percentage of the common stock of Hamilton Oil Corporation (HOC) (the "Volvo Transaction").

Before Cunningham attempted to serve them with the Canadian Complaint, the Hamilton Parties brought this action in the United States District Court for the District of Colorado. The Hamilton Parties sought a declaration of nonliability to Cunningham on all of Cunningham's Canadian claims. Cunningham filed an Answer and Counterclaim on April 12, 1994, challenging this court's subject matter jurisdiction and asserting as counterclaims here his common law claims in the Canadian action.[1] Thus, Cunningham's common law claims arising out of the ExCo and Volvo Transactions are before this court both as the subjects of the Hamilton Parties' request for declaratory judgment and as the subjects of Cunningham's four remaining counterclaims.[2] Cunningham's statutory claims are before the court only as part of the Hamilton Parties' request for declaratory judgment.

## II. JURISDICTION

■ My initial concern is with the propriety of the Hamilton Parties' efforts to litigate in this court defenses to claims pending against them in another court.[3] Federal courts properly may decline to issue declaratory relief in a dispute already the subject of a pending foreign action if the federal forum is being used for "procedural fencing" or "in a race for *res judicata*." 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2759 at p. 651 & n. 12 (1983 & 1994 Supp.).[4]

■ In particular, it is not the function of the federal declaratory action merely to anticipate a defense that otherwise could be presented in an action already pending before a court of competent jurisdiction. *Id.*, § 2758 at p. 632 & n. 13 (claims pending in state court generally), § 2765 at p. 729–30 (negligence claims pending elsewhere). But given that the primary issues to be litigated in this case arise under federal statutes and my conclusion below that Colorado bears the

---

1. Cunningham initially asserted counterclaims for fraud (Counterclaim I), breach of fiduciary duty (Claim II), negligence (Counterclaim III), and wrongful appropriation of corporate opportunity (Counterclaim IV). He amended his Counterclaim on April 26, 1994, adding a conspiracy claim (Counterclaim V).

2. On July 8, 1994, after Cunningham confessed the motion, I granted the Hamilton Parties' Motion for Judgment on the Pleadings on Cunningham's corporate opportunity counterclaim. Plaintiffs contend my ruling also resolved Counts VII and XIV of their Complaint, which sought a declaration of nonliability as to Cunningham's corporate opportunity claims in the Canadian action. Counts VII and XIV of Plaintiffs' Complaint are thus not part of the present motion.

3. Other than a declaration of nonliability, Plaintiffs seek no affirmative relief against Cunningham in this action.

4. This appears, in fact, to be the case. Defendant Cunningham filed suit against the Hamilton Parties in Canada notwithstanding the fact that at all times relevant to his lawsuit, both he and the various Hamilton defendants were residents of Colorado and the conduct forming the basis of his Statement of Claim took place in Colorado. For their part, the Hamilton Parties have frustrated Cunningham's efforts to pursue the Canadian action by challenging his various attempts at service, appealing the Alberta court's order permitting service *ex juris*, and moving for a stay pending resolution of a *forum non conveniens* application filed by ExCo—all when the Hamilton Parties are litigating at least two other cases involving the ExCo and Volvo transactions in Canada.

"most significant relationship" to the dispute giving rise to Cunningham's claims, I will, under these limited circumstances, exercise jurisdiction to consider the merits of Plaintiffs' claims of nonliability. *See id.*, § 2759 at 657–58 (decision to address merits of request for declaration of nonliability within district court's sound discretion).[5]

## III. *MERITS*

Cunningham's claims against the Hamilton Parties in the Canadian Complaint can be divided into three categories: (1) federal statutory claims (alleging violations of United States securities fraud, mail fraud, and civil RICO statutes); (2) Canadian statutory claims (alleging violations of Alberta provincial securities laws); and (3) common law claims (alleging fraud, breach of fiduciary duty, negligence, wrongful appropriation of corporate opportunity, and conspiracy). With the exception of Cunningham's corporate opportunity claim (which has been dismissed) the Hamilton Parties contend the applicable limitations periods have run on all claims in each category.

### A. *Standard of Review*

■ A motion for judgment on the pleadings is designed to dispose of cases where material facts are not in dispute and judgment on the merits can be rendered based on the content of the pleadings and any facts of which the court will take judicial notice. 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1367 at 509–10 (1990); 2A J. Moore et al., *Moore's Federal Practice* ¶ 12.15 at 12–141, *applied in Geltman v. Verity,* 716 F.Supp. 491, 491 (D.Colo.1989)

(Carrigan, J.). A Rule 12(c) motion may be of particular value when the statute of limitations provides an effective bar to a party's claims and the entire controversy could be disposed of by a pretrial summary motion. Wright & Miller, *supra* at 511 & n. 9 (citations omitted).

■ In reviewing a Rule 12(c) motion, all well-pleaded material allegations of the opposing party's pleading[s] are to be taken as true, and all allegations of the moving party [that] are denied are taken as false. Judgment on the pleadings may be granted only if, on the facts so admitted, the moving party is clearly entitled to judgment. *Geltman,* 716 F.Supp. at 491. Applying this standard, the following facts govern the statute of limitations analysis in this case:

● The transactions giving rise to Cunningham's claims against the Hamilton Parties took place on October 15, 1979 (the ExCo Transaction) and September 14, 1984 (the Volvo Transaction). *See* Cunningham's Canadian Compl. ¶¶ 7, 11, 37; Def.'s Am. Countercl. & Jury Demand ("Counterclaim") ¶¶ 27, 33.

● Cunningham did not discover his claims until he heard testimony about the ExCo and Volvo Transactions during the trial in a related case in March 1988.[6] Counterclaim ¶¶ 30, 41.

### B. *Cunningham's Statutory Claims*

#### 1. *Federal Securities Fraud*

■ Cunningham's Canadian Complaint alleges violations of §§ 10(b) and 14(a) of the

---

5. As I stated in my Order denying the Hamilton Parties' *ex parte* request for an order restraining the Canadian court from issuing an anti-suit injunction to prevent the prosecution of this lawsuit (an "anti-anti-suit injunction"), "parallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one [jurisdiction] which can be pled as *res judicata* in the other." Order at 4–5 (filed March 25, 1994) (quoting *Gau Shan Co. v. Bankers Trust Co.,* 956 F.2d 1349, 1352 (6th Cir.1992)). Without final judgment from the Canadian court, surrender of jurisdiction is justified only under exceptional circumstances. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

6. In 1985, a class of ExCo shareholders initiated an action against the Hamilton Parties and others arising out of the ExCo Transaction, alleging fraud, conspiracy, breach of federal securities laws and other federal statutes, as well as breach of fiduciary duty, negligence and usurpation of corporate opportunity. *See generally Eliasen v. Hamilton et al.,* No. 81 C 123, 1987 WL 7815 (N.D.Ill.1987). Cunningham was present at the trial as an employee of OilCo, but not as a member of the plaintiff class because the class excluded officers and directors of the Hamilton entities being sued. *Eliasen* apparently settled before the trial's conclusion.

Securities Exchange Act of 1934. Statement of Claim ¶¶ 22, 25. The Hamilton Parties assert a one-year/three-year limitations period applies to these claims. Pls.' Mot. J. Pldgs. at 7 (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 362, 111 S.Ct. 2773, 2781, 115 L.Ed.2d 321 (1991); *Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir.1993); *Ceres Partners v. GEL Assoc.*, 918 F.2d 349, 361–64 (2d Cir.1990)). The one-year limitations period accrues upon discovery by plaintiff of the facts constituting the alleged fraud. The three-year limitations period runs from the date of the actual violation and constitutes the maximum time period in which a federal securities claim · may be brought. There is no equitable tolling of the three-year period. *Lampf*, 501 U.S. at 363, 111 S.Ct. at 2782.

Under *Lampf* and its progeny, the one-year/three-year limitations period governs both Cunningham's § 10(b) and § 14(a) claims under the Act. Applying this limitations period to the operative facts of this case, Cunningham's securities fraud claims based on the 1979 ExCo Transaction were time-barred on October 15, 1982 and his claims based on the 1984 Volvo Transaction were time-barred on September 14, 1987.

### 2. *Cunningham's Mail Fraud Claim*

■ The general five-year statute of limitations for non-capital crimes applies to criminal prosecutions under the mail fraud statute, 18 U.S.C. § 1341. *See* 18 U.S.C. § 3282, *applied in United States v. Blosser*, 440 F.2d 697, 699 (10th Cir.1971). The Hamilton Parties assert there is no private right of action under the statute,[7] but argue if there were, the general five-year limitations period would apply. The general limitations period begins to run upon completion of the crime, *Pendergast v. United States*, 317 U.S. 412, 418, 63 S.Ct. 268, 270, 87 L.Ed. 368 (1943), or, in the case of mail fraud, from the date of mailing. There is no discovery rule.

In his Canadian Complaint, Cunningham alleges Plaintiffs committed mail fraud by making material misrepresentations or omissions in a 1979 mailing relating to the ExCo Transaction. Canadian Compl. ¶ 25. Accordingly, even if there were a private right of action for mail fraud, Cunningham's claim would have been time-barred in 1984.

### 3. *RICO*

■ RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). The period may be tolled by application of the discovery rule. *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817, 820–21 (10th Cir.1990). Taking as true Cunningham's allegation that his causes of action accrued in March 1988, his RICO claim was time-barred in March 1992.

### 4. *Canadian Securities Fraud Claim*

■ The Hamilton Parties have submitted a copy of Section 175, Part 16 of Alberta's 1981 *Securities Act*, Chapter S–6.1, in support of their contention that Cunningham's claims based on the Alberta Securities laws are time-barred under Alberta law. Pls.' Mot. J. on the Pleadings, Ex. 1. Plaintiffs argue, and the submitted documents appear to support, that Alberta securities fraud claims are subject to a one-year limitations period that runs from the date of the transaction that gave rise to them. Plaintiffs contend there is no applicable discovery rule and conclude the time period for Cunningham to have filed his claims based on the 1979 ExCo Transaction ran in 1980 and those based on the 1984 Volvo Transaction in 1985.

Cunningham apparently concedes Plaintiffs' limitations analyses with respect to both his federal and Alberta statutory claims, having failed to address either in his brief. He simply urges this court to decline to issue the declaration of nonliability sought by the Hamilton Parties' because doing so would affect the "rights and powers" of the Alberta

---

**7.** The Hamilton Parties have filed a separate Rule 12(c) motion for judgment on the pleadings on Cunningham's mail fraud claim, seeking a declaration of nonliability on grounds no private right of action exists under 18 U.S.C. § 1341.

Because I am granting Plaintiffs' instant motion for judgment on the pleadings with respect to the mail fraud claim on grounds it is time-barred, I do not reach the question raised in the second motion.

court to rule on the claims pending before it. Given the nature of the relief sought by the Hamilton Parties in this action, Cunningham argues, it is the Canadian court that has the "most significant" interest in determining the issues raised by this dispute. With the exception of Cunningham's claims brought under Alberta's securities laws, I disagree.

When asked to explain at oral argument what effect a declaration of nonliability in this court might have on the court in Alberta, Cunningham's counsel responded the answer was "unclear." Counsel asserted, however, that a declaration would be used to seek "anti-suit injunctions and anti-anti-suit injunctions," matters in which this court "ought not get involved." I made my position on such injunctive relief clear when I denied the Hamilton Parties' *ex parte* motion for an anti-anti suit injunction earlier in these proceedings. *See* Order (filed March 25, 1994). Moreover, Cunningham's concerns amount to little more than an invocation of general comity principles already addressed, and distinguished, in Section II, *supra*. With respect to Cunningham's federal law claims, therefore, I will grant the relief requested by Plaintiffs in their Complaint for Declaratory Judgment.

Cunningham's claims based on Alberta's securities laws are a different matter, however. This court has little interest in determining the rights of the parties under Alberta law, particularly when Cunningham's Alberta claims are before this court only as the subjects of the Hamilton Parties' request for a declaration of nonliability. The Calgary court clearly is in a better position to address the Alberta statute of limitations defense asserted by the Hamilton Parties, and I decline to issue the relief requested in Plaintiffs' Complaint.

### C. *Common Law Claims*

Cunningham asserts common law claims for fraud, breach of fiduciary duty, negligence, and conspiracy against the Hamilton Parties in both the Canadian action and this federal declaratory judgment action. *See* Canadian Compl., ¶¶ 25, 32, 35; Am. Countercl. & Jury Demand, ¶¶ 43–69. It is the choice and operation of the statutes of limitations applicable to these claims that form the crux of the present dispute.

The Hamilton Parties contend Colorado's statutes of limitation apply and that Cunningham's common law claims are time-barred as a matter of Colorado law. Cunningham argues Canadian law applies and that under Canadian law, his claims were timely filed. Were Colorado law to apply, however, Cunningham asserts his claims were timely because they arose out of the same transaction that formed basis of the Hamilton Parties' Complaint for Declaratory Judgment and thus fall within the scope of Colorado's revival statute, C.R.S. § 13–80–109. I address these arguments below.

#### 1. *Choice of law*

The Hamilton Parties initially asserted Colorado law applied to Cunningham's common law claims because federal courts exercising supplemental jurisdiction are bound to apply the forum state's substantive law. Pls.' Mot. J. on the Pleadings at 10 (citing *Haynes v. Marshall,* 887 F.2d 700, 705 (6th Cir.1989)). They retreated from this argument in their reply, however, stating it "appear[ed] federal common law applies where, as here, nondiverse common law claims are joined with federal [question] claims." Pls.' Reply Supp. Mot. J. on the Pleadings at 4 (citing, *inter alia, Morgan v. United Air Lines, Inc.,* 750 F.Supp. 1046, 1052 (D.Colo. 1990) (Babcock, J.) (adopting recommendation of U.S. Magistrate Judge Abram)). The latter is the correct statement of the law.[8]

---

8. Plaintiffs contend the distinction is academic, because both federal common law and Colorado law follow the Restatement approach to conflict issues. Pls.' Reply at 5, n. 1 (citing *Conlin v. Hutcheon,* 560 F.Supp. 934, 935 (D.Colo.1983) (Kane, J.) (applying Colorado's most significant relationship test in diversity action); *Morgan, supra,* 750 F.Supp. at 1052–53 ("both Colorado and the federal common law choice for choice of law principles is found under the Restatement (Second) Conflicts of Laws.")). With respect to

limitations law, this is incorrect. *Morgan* did not involve choice of limitations law and *Conlin* was decided before Colorado's adoption in 1984 of the Uniform Conflict of Laws–Limitations Act of 1982, 12 U.L.A. 61–65 (Supp.1994). *See* C.R.S. §§ 13–82–101 to 107. The Uniform Act provides that the question of limitations should be governed by the law governing the underlying claim, rather than by the local law of the state with the most significant relationship to the limitations

*See, e.g., Schoenberg v. Exportadora de Sal, S.A. de C.V.,* 930 F.2d 777, 782 (9th Cir.1991); *Edelmann v. Chase Manhattan Bank, N.A.,* 861 F.2d 1291, 1294 & n. 14 (1st Cir.1988); *see generally* Note, *Applicability of State Conflicts Rules when Issues of State Law Arise in Federal Question Cases,* 68 Harv. L.Rev. 1212, 1227–29 (1955).

Federal courts have looked to the Restatement (Second) Conflict of Laws and its "most significant relationship" approach to choice of law issues in applying federal common law in this area. *See Harris v. Polskie Linie Lotnicze,* 820 F.2d 1000, 1003 (9th Cir.1987), *cited approvingly in Morgan,* 750 F.Supp. at 1052; *Schoenberg,* 930 F.2d at 782; *Edelmann,* 861 F.2d at 1295. The Restatement approach requires courts to consider a general list of policy factors (set forth in § 6) together with lists of particularized connecting factors depending on the specific area of law at issue. *See generally* Eugene F. Scoles & Peter Hay, *Conflict of Laws* § 2.13, p. 34 (2d ed. 1992, West).

Section 6 factors include: (a) the needs of interstate and international systems; (b) the relevant policies of the forum state; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. Rest.2d Confl. Laws § 6 (1971). In tort or fraud actions, the particularized connecting factors to be taken into account when applying § 6 include: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of in-corporation, and place of business of the parties; and the place where the relationship between the parties is centered. *See id.,* §§ 145(2) (torts),[9] 148(2) (fraud).[10] Both the policy considerations of § 6 and the specific connecting factors to be considered in particular areas of the law are intended to lead the court to the law of the state with the "most significant relationship" to the occurrence or transaction at issue. Scoles & Hay, *supra,* § 2.14 at 35.

The Restatement takes the position that statute of limitations choice of law questions should be decided in the same way as choice of law questions generally, abandoning its earlier position that statutes of limitation should be treated as procedural for choice of law purposes and governed by the law of the forum. Reporter's Note, Rest.2d Conflict of Laws § 142 at 130 (1988 Pock.Pt.) (discussing new § 142 as replacement for original §§ 142 and 143). Thus, the first paragraph of new § 142 provides that the question of whether a claim will be maintained against the defense of the statute of limitations "is determined under the principles stated in § 6," i.e., the local law of the state with the most significant relationship to the limitations issue will govern. Reporter's Note, at 130.

Generally, that state will be the forum state. Rest.2d § 142(1). But where maintenance of a claim would serve no substantial interest of the forum and the claim would be barred by the statute of limitations of a state with a more significant relationship to the parties and the occurrence, courts may decline to apply a forum statute of limitations permitting the claim and instead apply the other state's statute barring it. *Id.,* § 142(2).[11]

---

issue as required under the Restatement. Reporter's Note, Rest.2d Confl. Laws § 142, p. 130 (1988 Pock.Pt.).

**9.** Thus, the rights and liabilities of the parties in tort actions are determined "by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Rest.2d § 145 (1971).

**10.** In fraud actions, the local law of the state where the false representations were made and where the plaintiff's action in reliance took place will govern "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." *Id.,* § 148 (1971).

**11.** The Tenth Circuit applied § 142(2) to determine which state's statute of limitations applied where a federal statute forming the basis of plaintiff's claim fails to specify a limitations period. *See Held v. Manufacturers Hanover Leasing*

Applying the Restatement approach to the choice of law issues before me, I find both Colorado common law and Colorado statutes of limitation govern the claims filed by Cunningham against the Hamilton Parties in this case. It is Colorado, not Canada, that bears the "most significant relationship" to Cunningham's claims: The domicile, residence and place of business of all the parties to this case is, and at all times relevant to this dispute was, in Colorado (Compl. ¶¶ 2–7; Ans. ¶ 1; Countercl. ¶¶ 1); the relationships between Hamilton Parties and Cunningham, whether as employer-employee or issuer-shareholder, were centered in Colorado (Compl. ¶¶ 7; Countercl. ¶¶ 1, 13); and the wrongs of which Cunningham complains—the ExCo and Volvo Transactions and related misrepresentations—took place in Colorado. Countercl. ¶¶ 13, 15, 34, 36. The judge in the related *Eliasen* case apparently agreed. *Eliasen v. Hamilton*, 1987 WL 7815, *9 ("place of the wrong" with respect to claims arising out of ExCo and Volvo Transactions was Colorado).

### 2. *Colorado Limitations Law*

Cunningham concedes that before the Hamilton Parties initiated the present suit against him in Colorado, the two- and three-year Colorado statutes of limitations applicable to his common law counterclaims had run. Def.'s Resp. Pls.' Mot. J. on the Pldgs. at 3. Cunningham attempts to resuscitate his claims, however, through application of Colorado's revival statute, C.R.S. § 13–80–109 (1987).

In pertinent part, § 13–80–109 states

A counterclaim or setoff arising out of the transaction or occurrence which is the subject matter of the opposing party's claim shall be commenced within one year after service of the complaint by the opposing party and not thereafter.

Cunningham contends that because the Hamilton Parties admitted in their Answer to his Counterclaim that each of Cunningham's claims arose out of the same transaction or occurrence as forms the basis of their Complaint, § 13–80–109 applies and Cunningham's counterclaims were timely filed. Resp. at 3–5. The Hamilton Parties, of course, disagree.

The Hamilton Parties argue that a request for a declaration of nonliability is not a "claim" within the meaning of § 13–80–109 as would trigger defendant's right to assert an otherwise stale counterclaim in response to it. Reply at 12 (citing *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 549 (2d Cir.1963) (a request for a declaration of nonliability based on a statute of limitations is not a cause of action within the meaning of the limitations section, it is "the negative of the claim or cause of action with respect to which the declaration is sought.")). They also point to the Colorado Court of Appeals' unpublished conclusion in *Duell v. United Bank of Pueblo, N.A.*, 892 P.2d 336 (Colo. App.1994) to argue a plaintiff, who has instituted litigation by asserting time-barred claims, cannot "revive" those same claims under § 13–80–109 simply by repleading them as counterclaims in a reply to a defendant's compulsory counterclaim. Under those circumstances, the court in *Duell* held plaintiff's counterclaiming the same claims it brought in the main action "cannot be considered a 'counterclaim or setoff' within the meaning of [§ 13–80–109]." 892 P.2d at 340.

I agree and find the suggestion that a plaintiff in one action can "revive" his concededly stale claims by filing them as counterclaims in a parallel action brought by the defendant solely for the purpose of having those claims declared stale illogical and unsound. Permitting plaintiff to revive a claim in response to an action for a declaration of nonliability would lead to the "incongruous result" of precluding entirely suits for declaratory judgment on limitations grounds in jurisdictions with revival statutes. *Alabama Bancorporation v. Henley*, 465 F.Supp. 648, 656 (N.D.Ala.1979). I agree with the Hamilton Parties' position on this issue and con-

---

*Corp.*, 912 F.2d 1197, 1202–03 (10th Cir.1990) (Brorby, CJ.) (New York, not Colorado, statute of limitations applied in ERISA action brought by plaintiff in Colorado because New York had a

"more significant relationship" to the parties and to the "occurrence" at issue, *viz*. plaintiff's discharge).

clude § 13–80–109 does not apply in declaratory judgment actions for nonliability on limitations grounds.

### 3. *Res Judicata* Effects of Instant Ruling

In ordering oral argument on the instant motion, I asked the parties to address the *res judicata* effects, if any, of a ruling by this court granting the relief sought by the Hamilton Parties. The Hamilton Parties argued a declaration of nonliability as to claims pending against them in Canada but not in Colorado would result in issue preclusion, as would a finding that Colorado law applied to Cunningham's common law claims. However, a finding that Colorado law applied to the common law claims *and* that those claims were time-barred would, according to the Hamilton Parties, result in claim preclusion. Cunningham disagrees.

The cases upon which both sides rely involve the *res judicata* effect of statute of limitations dismissals between the various state and federal courts in the United States. Neither side cites any authority showing the preclusive effect given a U.S. court's judgment on choice of law and limitations issues by a foreign court. The question is one for the Alberta court to determine under Canadian law. I will not speculate as to how Canadian law operates in this regard or whether Canadian courts will or should recognize the choice of law analysis I have applied.

I will, however, correct what I perceive to be a misapprehension on the part of Cunningham as to the nature of a dismissal on limitations grounds under both Colorado and federal common law. Cunningham relies on *United States v. Gammache*, 713 F.2d 588 (10th Cir.1983) and *Reinke v. Boden*, 45 F.3d 166 (7th Cir.1995) to argue the substantive-procedural distinction still applies when analyzing statute of limitations issues and that a dismissal on limitations grounds extinguishes only the parties' right to seek a remedy in the dismissing jurisdiction, not the cause of action itself.

The Restatement (Second) of Conflict of Laws, as explained in Section III.C.1. *supra*, expressly abandoned the distinction when it replaced old §§ 142 and 143 with new § 142. The Tenth Circuit abandoned it in its 1991 *en banc* opinion in *Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128 & n. 2. *Reinke* was a diversity suit in which the federal court addressed the *res judicata* effect to be given a Minnesota state court judgment dismissing a claim on limitations grounds where Minnesota had not abandoned the distinction and adhered to the old view that statutes of limitations were procedural devices. 45 F.3d at 170. In *Reinke,* the Seventh Circuit concluded the Minnesota state court judgment meant little more than the action was time-barred in Minnesota, and was not *res judicata* as to whether it was time-barred in Illinois. *Id.* at 172.

The judgment at issue in this case is that of a federal court. Under *Murphy,* any determination by one federal court that an action is time-barred precludes a successive action in a second federal court, even if the second court would apply a different statute of limitations. 935 F.2d at 1128–29. Again, however, the relevance of any of these cases when the second court is a foreign one is unknown and is best left to that court.

### IV. *CONCLUSION*

For the foregoing reasons, I conclude Cunningham's federal statutory securities fraud, civil RICO, and mail fraud claims asserted against the Hamilton Parties in the Canadian action are time-barred and enter declaratory judgment in favor of the Hamilton Parties on Counts I–III, and IX of their Complaint. I find Colorado, not Canadian, law supplies the statutes of limitation applicable to Cunningham's common law claims and conclude those claims, too, are time-barred. Accordingly, I enter declaratory judgment in favor of the Hamilton Parties on Counts IV—VI and X—XII of their Complaint and enter judgment in their favor on Cunningham's Counterclaims I—III and V. I decline to issue declaratory relief as to the timeliness of Cunningham's Alberta securities law claim on comity grounds and dismiss Counts VIII and XIII of Plaintiffs' Complaint accordingly.